UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
00-CV-4(JMR/SRN)

Henrietta Bradley )
)
v. ) ORDER
)
American Home Products Corp. )
and its subsidiaries and )
assigns (d/b/a Wyeth-Ayerst )
Laboratories) )

Plaintiff, Henrietta Bradley, was employed by the defendant, American Home Products Corp. ("AHP"), as a pharmaceutical sales representative. Employment difficulties, which culminated in her termination, led to this lawsuit. Ms. Bradley alleges nine separate claims against defendant for race, age, and disability discrimination, as well as retaliation under state and federal law. Defendant moves for summary judgment.

I. Facts[1]

A. Bradley's Work History

Henrietta Bradley is a 51-year-old African American female. She began working for American Cyanamid Corporation ("Cyanamid") as a sales associate in 1990, selling pharmaceutical products to hospitals, clinics, doctors, and pharmacies. Her sales territory included suburbs of Minneapolis and St. Paul and western Wisconsin.

In 1995, Cyanamid was acquired by AHP, and Ms. Bradley was

[1]The Court notes plaintiff's statement of facts is nothing more than a verbatim recitation of her affidavit. In places, her attorney simply changed first-person references to third-person references. Much of the affidavit is based on second-hand information, raising procedural issues under Rule 56(e) of the Federal Rules of Civil Procedure.

AUG

reassigned to a non-contiguous territory. In 1996, she began to complain about her new sales territory, claiming it had a low sales potential. [Bradley Aff., ¶6.] She asked the district manager to realign her sales territory in order to afford her sales opportunities comparable to her colleagues'. AHP made a few changes to the territory, but -- at least according to Ms. Bradley -- the changes did little to enhance sales opportunities. In 1997, she requested a transfer to another territory, but the request was denied. In August, 1998, Ms. Bradley prepared a written report analyzing her territory through statistical data and comparing it to other territories. [Bradley Aff., Ex. 28.]

AHP declined to make further changes to Bradley's territory based on its own evaluation that the territory fit within its objective criteria. Shortly after Bradley's termination, the territory was realigned for the new salesperson -- a young, white male.

B. Promotions

Bradley claims AHP failed to promote African Americans. She further claims job openings were not posted, forcing employees to rely on managers to inform them of promotional opportunities. Bradley states she told her manager she was interested in a promotion in 1996 and 1997, but was informed of only one such job in 1997. She applied for the job but was not selected; the applicant who was selected and promoted was Caucasian.

C. Problems Between AHP and Bradley

While at Cyanamid, Bradley received positive performance evaluations and merit pay increases. She contrasts her December, 1997, increase of $8.00, however, with the $2,000-3,000 given to several of her colleagues. According to Ms. Bradley, her lower increase was in retaliation for her complaining about the unequal sales opportunities in her territory.

The employment relationship further deteriorated, with particular difficulties under Lora Besse's supervision. Bradley claims Besse, in effect, compared her unfavorably with white employees, and that the message she received was that white employees were good, and she was bad. While Ms. Bradley does not claim Besse ever used the term "white employees," she claims this was the "message" she received.

Ms. Bradley developed somatic difficulties, including high blood pressure, depression, and anxiety. She reported difficulty sleeping, severe headaches, and panic attacks. In September, 1998, Bradley's doctors recommended she take a medical leave from work. She complied, during which time she received short-term disability pay. While on medical leave, Bradley received a letter confirming her leave and outlining AHP's sick leave policies. [Schermer Aff., Ex. 18.] Bradley claims she tried to obtain a copy of AHP's policy on sick leave, but never received the information.

In October, 1998, Bradley's doctors authorized her to return to work on a part-time basis as part of a gradual transition to

full-time work. [Schermer Aff., Ex. 14, at 300020.] Besse, however, denied this request, contending AHP does not allow territory representatives to work part-time work. AHP's human resource managers testified that they do not recall Besse ever asking about transitional part-time work policies. While Ms. Bradley claims part-time work "policies" were not uniformly applied among black and white employees, she offers no specific examples to support this contention.

In any event, because her request for part-time work was denied, she attempted to return full-time. On her return, she immediately experienced an incident of high blood pressure. Her doctor opined that her hypertension was stress-induced and related to her work environment. On her doctor's recommendation, she returned to medical leave.

On December 4, 1998, Bradley received a letter from William Harding, AHP's Assistant Vice President of Human Resources, stating AHP's medical leave policy provided for a maximum of 26 weeks of medical leave, followed by 26 weeks of preferred reemployment. The letter further stated that AHP's policy allowed for permanent replacement of an employee after a three month absence. [Schermer Aff., Ex. 19.] Bradley was advised to return to work by December 18, 1998, or her three months would expire and she would be permanently replaced. Id. The letter further indicated she would be eligible for the first available sales territory in her former area during the reemployment period, provided she gave notice of

her ability to return to work. Id.

Bradley never notified AHP that she was able to return to work. Instead, she replied to Mr. Harding's letter on December 18, 1998, informing him that she was unable to work, but wanted to be advised of any changes in her current position or openings in her area. [Schermer Aff., Ex. 20.] Bradley was not informed of any changes or openings after this time.

By letter, dated February 22, 1999, Ms. Bradley was notified that her employment would be officially terminated effective March 9, 1999. [Schermer Aff., Ex. 21.] The letter stated: "you will have been absent from your job in excess of six noncontinuous months, and will have reached the end of the Family and Medical Leave Act period." Id. Shortly thereafter, she found a new job at which she has apparently flourished. Her salary has increased by approximately 5.5% per year.

Ms. Bradley filed her race, age, and disability discrimination charges with the Equal Employment Opportunity Commission ("EEOC") and the Minnesota Department of Human Rights ("MHRA") on December 21, 1998. She received her right to sue letter on October 8, 1999, and commenced this action on January 3, 2000. Ms. Bradley claims violations of state and federal law relating to age, race, and disability discrimination, as well as retaliation. She claims discrimination and retaliation by being unfairly assigned to a poorly performing territory and denied territory realignment; by being denied transfers, promotions, proper bonuses, and a copy of

the company's medical leave policy; by not being allowed to return to work part-time; and by being terminated as a result of unfair enforcement of AHP's medical policy.

II. Analysis

Defendants seek summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. Id. at 248-49; see also Hartnagel v. Norman, 953 F.2d 394, 395-96 (8th Cir. 1992).

If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. Celotex, 477 U.S. at 322; Mt. Pleasant v. Associated Elec. Coop., Inc., 838 F.2d 268 (8th Cir. 1988).

While the Eighth Circuit Court of Appeals has cautioned against the promiscuous use of summary judgment in employment discrimination cases, see Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994), it has squarely held that, "Notwithstanding these considerations, summary judgment is proper when a plaintiff fails

to establish a factual dispute on an essential element of her case." Id. (citing Bialas v. Greyhound Lines, In., 59 F.3d 759, 762 (8th Cir. 1995)). With these standards in mind, the Court turns to AHP's motion for summary judgment.

A. Continuing Violation Theory

AHP's summary judgment motion contends many of Ms. Bradley's complaints are untimely because she did not file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory act, as required by Title VII and the Age Discrimination in Employment Act ("ADEA"), or within 365 days as required by the MHRA. See 42 U.S.C. 2000e-5(e); 29 U.S.C. § 626(d)(2); Minn. Stat. 363.06(3). Ms. Bradley's charge was filed December 21, 1998. According to AHP, any alleged discriminatory acts occurring before February 24, 1998 ("Title VII and ADEA") or December 21, 1997 ("MHRA") are time-barred. Bradley states that her claims are timely because they are part of a continuing violation, which commenced with her territory assignment, and continued until her termination. See Treanor v. MCI Telecommunications Corp., 200 F.3d 570, 573 (8th Cir. 2000) (holding the statute of limitations in MHRA and Title VII may be avoided by the continuing violations theory). Defendant replies that any alleged discriminatory acts were discrete events, barring any claims prior to February 24, 1998, or December 21, 1997.

It is established that if a series of acts constitute a continuing pattern of discrimination, the applicable statute of

limitations period does not commence until the last occurrence of discrimination. See Mandy v. Minnesota Mining and Mfg., 940 F. Supp. 1463, 1467 (8th Cir. 1996). This continuing violation doctrine allows for redress of earlier discriminatory acts if they are related to violative acts which occurred within the statutory period. Minnesota courts have applied this doctrine to MHRA claims as well. See Sigurdson v. Isanti County, 448 N.W.2d 62, 68 (Minn. 1989). The federal courts have recognized two categories of continuing violations: (1) a series of related acts, one or more of which falls within the limitations period; or (2) the maintenance of a discriminatory system or policy during the limitations period and before. See Mandy, 940 F. Supp. at 1468. Ms. Bradley claims her case falls into the first category.

It is also clear, however, that a plaintiff cannot assert a continuing violation based on isolated instances of discrimination in the past, even if the effects of that discrimination persevere into the present. See Jenkins v. Wal-Mart Stores, Inc., 910 F. Supp. 1399 (N.D. Iowa 1995) (citing Heymann v. Tertra Plastics Corp., 640 F.2d 115, 120 (8th Cir. 1981)). Therefore, in order to maintain each of her claims as part of a continuing violation, Ms. Bradley must show the acts about which she complains were not actionable as discrete violations of the applicable law, but were instead merely a series of related acts. See Stolzenburg v. Ford Motor Co., 143 F.3d 402 (8th Cir. 1998). The Court finds she is unable to do so.

The Court concludes Ms. Bradley's asserted denial of promotion was a discrete employment action. See id.; High v. University of Minn., 236 F.3d 909, 909 (8th Cir. 2000) (holding the continuing violation doctrine has never been applied to a discrete act, such as a failure to promote); see also National R.R. Passenger Corp. v. Morgan, 122 S. Ct. 2061, 2073 (2002) (holding that discrete acts, such as termination, failure to promote, and denial of transfer, all must be filed within the applicable statue of limitations time period or are untimely). Ms. Bradley's claimed promotion denial occurred in November, 1997.[2] Because this denial occurred prior to February 24, 1998 (Title VII and ADEA) or December 21, 1997 (MHRA), Bradley's claim for failure to promote is time-barred.

Likewise, Ms. Bradley certainly knew of her assignment to an alleged undesirable sales territory when it occurred in 1995. The act -- whether wrongful or not -- was a discrete, completed act at that time, and a full four years before she filed her charge. See Gipson v. KAS Snacktime Co., 83 F.3d 225, 229 (8th Cir. 1996) (claim for assignment to a rural sales territory is time-barred as a discrete employment action). As a result, her claim of discrimination as a result of being assigned to an undesirable

[2]Ms. Bradley additionally claims she was denied notice of other promotional opportunities, causing her other denials of promotions. But her reply to the summary judgment motion does not identify the positions which she claims were denied her, nor has she adduced evidence to show she was qualified for these promotions. In any event, because these claimed failures to give notice of promotional job openings occurred during the fall of 1997, they would be time-barred.

sales territory is time-barred.

Similarly, the vast majority of Ms. Bradley's claimed denials of requests for transfers occurred prior to December 21, 1997 (MHRA) and February 24, 1998 (Title VII and ADEA). See National R.R. Passenger Corp. v. Morgan, 122 S. Ct. 2061, 2073 (2002) (holding that discrete acts, such as a denial of transfer, must be filed within the applicable statue of limitations time period or are untimely and no longer actionable). Accordingly, the Court finds all denials of transfer claims premised on acts which occurred prior to February 24, 1998, or December 21, 1997, are time-barred.

At least one U.S. District Court applied a three-factor approach set forth in Berry v. Bd. of Supervisors of L.S.U., 715 F.2d 971, 981 (5th Cir. 1983) to determine whether claimed discriminatory acts constitute a continuing violation. See Mandy v. Minnesota Mining and Mfg., 940 F. Supp. 1463 (D. Minn. 1996) (applying, but not adopting, the Berry test). The Berry court identified the following three non-exhaustive factors as relevant in its analysis: (1) whether the acts involve the same subject matter; (2) the frequency of the acts; and (3) the degree of permanence of the alleged acts of discrimination; that is, "whether an act outside the limitations period should have triggered the plaintiff's awareness of and duty to assert his or her rights." Id. The Court notes at the outset that the Berry analysis is most often employed in sexual harassment claims, as it was in Mandy, and

not in discriminatory treatment claims such as this.

If the Court were to apply the Berry factors here, the result would be the same. The first factor -- similarity of subject -- is not fulfilled in this case. Here, to the extent the individual incidents can be discerned from Ms. Bradley's response pleadings -- the failures to promote, denials of transfer, denial of territory realignment, denial of proper bonuses, and her termination -- occurred under different circumstances and involved different people and events. The second -- frequency of acts factor -- asks whether a reasonable person would feel the environment was threatening throughout the period alleged, even in the absence of constant harassment. See Mandy v. Minnesota Mining and Mfg., 940 F. Supp. 1463, 1469 (D. Minn. 1996). While a reasonable person might consider Ms. Bradley's employment troublesome, there were never overt acts which could be considered threatening.

Regardless, the Court finds the third factor -- permanence -- dispositive. Here, the Court considers whether an act outside the limitations period should have triggered plaintiff's awareness, and thereby her duty, to assert her legal rights. The acts which the Court has already identified -- denials of transfers, promotions, territory realignment, proper bonuses, and a belief that she had been assigned to a poorly performing territory -- possess the requisite degree of permanence, such that Ms. Bradley should have asserted her rights in a timely manner.

There is another reason why this is so: by asserting her

rights early on, these statutory intervention procedures could well have been triggered. Had this occurred, it is possible that issues which have now reached an unbridgeable state could have been ameliorated, and a courthouse battle averted. See Williams v. Little Rock Municipal Water Works, 21 F.3d 218, 222 (8th Cir. 1994) ("Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts.").

For these reasons, Ms. Bradley's pre-December 21, 1997, MHRA claims, and her pre-February 24, 1998, Title VII and ADEA charges of failure to promote, assignment to an unfair territory, and most of her requests for transfers, are time-barred and must be dismissed. As to those claims which are not time-barred, the Court finds disputed material fact questions still exist which require denial of defendant's summary judgment motion.

III. Conclusion

The Court finds plaintiff's individual claims do not constitute a continuing violation, and several, therefore, are time-barred. The remainder of her claims have unresolved questions of material fact which preclude summary judgment. Accordingly, based on the findings of fact, conclusions of law, all the files and records, and for the reasons stated above, IT IS ORDERED that:

Defendant's motion for summary judgment is denied in part and granted in part.

Dated: August 14th, 2002

JAMES M. ROSENBAUM
United States Chief District Judge